Filed 6/21/21  P. v. Escalante CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER ESCALANTE,<br><br>    Defendant and Appellant. | F079001<br><br>(Super. Ct. No. BF174404A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Thomas W. Casa for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Christopher Escalante was convicted by jury trial of vehicle theft. On appeal, he contends (1) the trial court erred in admitting evidence of his in-field identification and (2) there was insufficient evidence to identify him as the perpetrator. We affirm.

## PROCEDURAL SUMMARY

On November 28, 2018, the Kern County District Attorney filed an information charging Escalante with willfully and unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a); count 1) and willfully and unlawfully buying or receiving a motor vehicle (Pen. Code, § 496d, subd. (a); count 2).

On February 11, 2019, the court conducted an Evidence Code section 402 hearing based on Escalante's motion in limine to exclude on due process grounds evidence of the in-field identification and subsequent identifications. The court denied Escalante's motion.

The jury began deliberating on February 14, 2019, and the next day informed the court it had voted four times and could not reach a unanimous verdict. The court instructed the jury to continue deliberating. On February 19, 2019, the jury found Escalante guilty of count 1.[1]

On March 19, 2019, the trial court sentenced Escalante to a split sentence of three years on count 1, 16 months in county jail and the remainder of the sentence to be served on mandatory supervision. The court awarded credit for 252 days in custody.

On March 22, 2019, Escalante filed a notice of appeal.

## FACTUAL SUMMARY

On November 5, 2018, at approximately 6:15 a.m., Julio Ventura-Pinada (Ventura) went out to his driveway and turned on his 2005 silver Scion and then went

---

[1]    The jury was instructed that counts 1 and 2 were charged in the alternative. (See CALCRIM No. 3516.)

back inside to get a sweater. Once inside, he heard tires "peeling out." When he looked outside, he realized his Scion was gone. He then got into his wife's car in an attempt to locate the Scion.[2] Five minutes later, he spotted the Scion and began following it. He called his wife and told her to call the police. Ventura chased the Scion for 15 minutes before he ran low on gas and went back home. During the car chase, Ventura got two quick looks at the driver on two separate occasions, each lasting two to three seconds.

Kern County Sheriff's Deputy Daniel Rickard was dispatched to Ventura's residence at approximately 6:30 that morning. When Ventura got home, Rickard was already there. Ventura told Rickard that as he followed the Scion, he was able to get alongside of it on two separate occasions and look at the driver. Ventura described the driver as a white male with shaved, dark hair in a black sweater. Shortly thereafter, the Scion was located at a nearby grocery store. Rickard left Ventura's residence and headed to the grocery store, which was four to five miles away.

When Rickard arrived 10 to 15 minutes later, he spotted Escalante walking in the parking lot, approximately 150 feet away from the Scion. Rickard stopped him at 7:12 a.m. However, by that time, Escalante was at an intersection almost a block away. Rickard described him as a Hispanic male with dark, shaved hair. He was wearing a black sweater and camouflage shorts with something red underneath his sweater. After he detained Escalante, Rickard contacted Ventura and his wife and asked them to meet him at the grocery store parking lot to identify Escalante.

The in-field identification took place at approximately 7:45 a.m. When Ventura and his wife arrived, Escalante was in the backseat of Rickard's patrol vehicle. Rickard pulled him out in handcuffs and faced him towards Ventura and his wife. Ventura was 15 to 20 feet away. There were three officers and three patrol vehicles present. Ventura instantly identified Escalante as the person who drove the Scion. Rickard did not

---

**2**      Escalante's partner was described as both his wife and his girlfriend at trial.

admonish Ventura prior to the identification and was unsure whether the other officers had done so. Rickard then arrested Escalante and transported him to jail.

## DISCUSSION

## I. In-Field Identification

Escalante contends that the in-field identification was inherently suggestive and violated his due process rights. Specifically, he argues that the in-field identification was unduly suggestive because Rickard removed him from the back of the patrol vehicle in handcuffs, in the presence of law enforcement officers and their patrol vehicles, and without admonishing Ventura. The People counter that notwithstanding those facts, the in-field identification was reliable under the totality of the circumstances. We agree with the People.

### A. Background

Prior to trial, Escalante moved to exclude evidence of the in-field identification and any subsequent identifications on due process grounds. The court conducted an Evidence Code section 402 hearing addressing the in-field identification and denied Escalante's motion to suppress the evidence. In denying Escalante's motion, the court stated the following:

> "All right. [¶] I certainly think that showups are sanctioned by the courts. I think that that is something that is consistent. There are factors to be considered, and I'm giving great weight in determining the viability of the showup in this case to a couple different things:
>
> "First, there was, although limited, it was an accurate description of the suspect that was apprehended. The shirt, or sweater, or whatever it was that [Escalante] was allegedly wearing was dark and matched the description that was given. The style of hair was dark and matched the cut that was given. I think he was described as a white male.
>
> "And I don't mean to be disrespectful when I say this, [Escalante], but you definitely have a lighter complexion than many people that I've seen in my courtroom and I'm familiar with, growing up in Bakersfield and Kern County. And so I could see how somebod[y]—if there is some sort of

cross-race identification issue there, I can see how that would be made as a reasonable inference of—in the description.

"And while these are all areas certainly that I think can be subject to cross-examination, I think combining that descriptive information with the very quick apprehension of [Escalante] in the area and the quick showup that was conducted in this particular case, my concerns that there's a substantial likelihood of irreparable misidentification are significantly lessened than they would be.

"There may be additional evidence that is presented at trial as it relates to the identification, but based on the record before me, I do think we have enough to overcome any taint that may have been established by the defense, and I will therefore allow that identification, if it's not otherwise barred by some other evidentiary rule."

### B.     *Applicable Law*

"[T]o determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)  An identification procedure is unduly suggestive if it " 'suggests in advance of identification by the witness the identity of the person suspected by the police.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 413.)  The defendant bears the burden of showing that the identification procedure was unduly suggestive or unreliable.  (*Id.* at p. 412.)

On appeal, we review the trial court's findings of historical fact deferentially, but independently review "whether, under those facts, a pretrial identification procedure was unduly suggestive." (*People v. Gonzalez* (2006) 38 Cal.4th 932, 943.)

5.

*C.      Analysis*

Here, there was no evidence that Rickard or the accompanying officers at any time suggested to Ventura that Escalante was in fact the person who took the Scion. On cross-examination, when asked by defense counsel whether the officers admonished him prior to the identification, Ventura answered that they "just asked [him] if it was the same person" who took the Scion. This did not suggest that Escalante was the perpetrator; it merely asked for Ventura's response. (See *People v. Ochoa*, *supra*, 19 Cal.4th at p. 413.) Moreover, the identification was not unduly suggestive simply because Escalante was in handcuffs during the identification. "[T]he mere presence of handcuffs on a detained suspect is not so unduly suggestive as to taint the identification." (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 386.) Likewise, an in-field identification is not unnecessarily suggestive just because the defendant is inside a police vehicle with police officers around it. (*People v. Craig* (1978) 86 Cal.App.3d 905, 914.)

Nevertheless, even if an identification procedure is unduly suggestive, it can still be reliable under the totality of the circumstances. (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 989). Particularly, the prompt identification of a suspect close to the time and place of the offense makes the identification more likely to be accurate. (*People v. Martinez* (1989) 207 Cal.App.3d 1204, 1219.) In this case, the in-field identification was conducted within two hours of the vehicle theft and within four to five miles of Ventura's residence. Ventura had just seen Escalante within the previous hour during the car chase and was able see him on two separate occasions. Ventura had described Escalante as a "white male" with short black hair in a black sweater. This description, while inaccurate as to his race, was otherwise generally accurate according to Rickard's description of Escalante at the time he detained him, and as the court observed, Escalante has a light complexion that rendered a racial misidentification reasonable.

In sum, the in-field identification was reliable and the trial court did not err in denying Escalante's motion to exclude it.

## II. Sufficiency of the Evidence

Escalante next contends there was insufficient evidence to prove his identity as the perpetrator because the only evidence presented to convict him was Ventura's "tentative and weak" identification testimony. We conclude the evidence was sufficient.

### A. *Background*

At trial, Ventura testified on direct examination that he did not get a look at the Scion's driver while he was following it, but did see that the driver was wearing either a black sweater or jacket and saw only one person in the vehicle. When the prosecutor asked whether he remembered driving alongside the Scion, Ventura answered, "Yes." Thereafter, the following testimony ensued:

"[PROSECUTOR]: Did you at any point pull alongside the vehicle, the Scion, when you were following him?

"[VENTURA]: Yes. I got quite close to it and then later well then—well, everything happened. It happened fast.

"[PROSECUTOR]: I understand. [¶] When you got close to it, did you get close to … the Scion?

"[VENTURA]: No. I couldn't.

"[PROSECUTOR]: So you never got next to the Scion?

"[VENTURA]: It was just in the light. I saw that it was—it was going out and I started to follow it, it was on Niles, and then the guy that was in the Scion started backing up. [¶] … [¶]

"[PROSECUTOR]: How many times did you—did you look or did you have a chance to look at the driver of the vehicle?

"[VENTURA]: Two times. Nothing more. But it was quick. [¶] … [¶]

"[PROSECUTOR]: Okay. Specifically[,] in regards to the driver of the vehicle, do you remember what you told a sheriff's deputy that day?

"[VENTURA]: Yes. That I had seen him with just—well, just a black jacket and then, yeah, nothing else. [¶] … [¶]

"[PROSECUTOR]: Did you ever tell the Kern County Sheriff's Deputy the type of hair that the driver had?

"[VENTURA]: … I just told him that he was wearing the black jacket and then he had a little bit like this, a little bit of beard.

"[PROSECUTOR]: Did [you] ever tell the Kern County Sheriff what the hair on his head looked like?

"[VENTURA]: I don't remember."

Ventura then positively identified Escalante in court as the person who took his Scion. Afterwards, Ventura testified to the in-field identification as follows:

"[PROSECUTOR]: You said [Escalante] is the person who took your car; right? [¶] … [¶]

"[VENTURA]: I don't remember it.

"[PROSECUTOR]: Did you say that [Escalante] drove [the] Scion? [¶] … [¶]

"[PROSECUTOR]: Did you—what did you tell the officers regarding [Escalante]?

"[VENTURA]: Yes. He seemed to me to be the same person that I had seen previously with the black sweater.

"[PROSECUTOR]: The same person with the black sweater who you saw drive the 2005 Scion?

"[VENTURA]: Yes. [¶] … [¶]

"[PROSECUTOR]: And how long did it take you to come to the conclusion that it was this person who took your car?

"[VENTURA]: Just an instant, well, because—well, he was still wearing the same clothes I saw him wearing before. He was still wearing the same shirt and everything when the police had stopped him."

8.

On cross-examination, defense counsel asked a series of questions regarding Escalante's appearance on the date of the incident and Ventura maintained that he only remembered that he was wearing a black sweater. Additionally, Ventura's wife testified that Ventura called her as he chased the Scion and described the driver as a bald man with a black shirt.

### B.    *Applicable Law*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime." (*People v. Boyer* (2006) 38 Cal.4th 412, 480.)

On appeal, the court "neither reweigh[s] the evidence nor reevaluate[s] the credibility of witnesses." (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.) The jury's finding will not be reversed "unless the testimony is physically impossible or inherently improbable." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

### C.    *Analysis*

To establish that a vehicle theft occurred pursuant to Vehicle Code section 10851, subdivision (a), the prosecution was required to prove Escalante unlawfully drove or took the Scion without the owner's consent and with the specific intent to temporarily or permanently deprive the owner of title or possession. (Veh. Code, § 10851, subd. (a).)

Escalante claims there was insufficient evidence to establish that he was the person who took the Scion. Specifically, he argues that Ventura's identification was unreliable because he "[got] no more than a glimpse for a few seconds" of the driver, and Ventura's testimony on this subject was inconsistent. The People counter that Ventura's

9.

identification provided substantial evidence to convict him, particularly when combined with corroborating evidence of Escalante's general appearance when police stopped him.

We conclude that, when viewed in the light most favorable to the jury's verdict, Ventura's testimony provided sufficient evidence to identify Escalante as the perpetrator of the vehicle theft. The evidence showed that shortly after the theft occurred, the Scion was located at a grocery store within four to five miles of Ventura's home, where the theft occurred. Escalante was approximately 150 feet away from the Scion when police arrived. Escalante matched the description provided by Ventura. During the in-field identification, Ventura instantly identified Escalante as the driver of the Scion. And at trial, Ventura again identified Escalante as the driver.

Moreover, Ventura's testimony was not unreliable because he answered questions with statements like, "Yes, I think so," and, "He seemed to me to be the same person …." "[I]t is not essential that a witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime, and the want of positiveness goes only to the weight of the testimony." (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 494.)

Similarly, discrepancies in Ventura's testimony and his inability to recall at trial information that he previously reported to the officers on the day of the theft, such as the style or color of Escalante's haircut, did not necessitate the jury's rejection of the identification. "The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance." (*People v. Lindsay*, *supra*, 227 Cal.App.2d at pp. 493-494.)

10.

The matters Escalante raises were for the jury to weigh and consider.  Because Ventura's identification of Escalante was neither physically impossible nor inherently improbable, we conclude it was sufficient.

## **DISPOSITION**

The judgment is affirmed.


SMITH, J.

WE CONCUR:


HILL, P.J.


POOCHIGIAN, J.